# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | |
|---|---|
| DANZIG LTD., a North Carolina Corporation, BRETT BERTOLAMI, <br><br> Plaintiffs, <br><br> vs. <br><br> INCEPTION MINING INC., Nevada Corporation, MICHAEL AHLIN, TRENT D'AMBROSIO <br><br> Defendants. | Case No: <br><br> Hon. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs come now and files suit against Defendants for breach of contract, state securities fraud, federal securities fraud, breach of fiduciary duty, unjust enrichment, and negligent misrepresentation. In further support of their claims, Plaintiffs state as follows:

## SUMMARY OF THE CASE

1. Plaintiffs Danzig Ltd. and Brett Bertolami provided a wide range of consulting services and cash investment to Defendant Inception Mining Inc. ("Company"), a publicly traded corporation whose shares trade on the OTC.QB exchange. They did so at the behest of Company managers Michael Ahlin and Trent D'Ambrosio ("Individual Defendants").

2. The instant Action arises out of a series of Agreements between Company and Plaintiffs, entered into on February 25, 2013, wherein Plaintiffs delivered to Individual Defendants a publicly traded "shell" company.

3. The purpose of the "shell" Company was for Individual Defendants to

merge their mining company into the shell and thereby have it be publicly traded so that it could access the capital markets without the outsized costs of a traditional initial public offering.

4. Plaintiffs transferred the "shell" company to Individual Defendants for no cash, and merely kept 8% of the stock, despite the fact that Plaintiffs had paid $250,000 for the shell.

5. Individual Defendants represented to Plaintiffs that they had procured a $1,000,000 investment into a mining project – Burlington Mine near Salmon, Idaho.

6. Based on this representation, Plaintiffs conveyed 18 million shares to Individual Defendants and retained approximately 1,800,000 shares for themselves.

7. As part of said transaction, Plaintiffs provided the shell company, and a variety of consulting services and kept only 8% of shares in the Company as consideration for their contributions, in exchange for following promises:

    a. the Company promised to register Plaintiff's shares with the U.S. Securities and Exchange Commission within 90 days of executing the Agreements, by May 25, 2013; and

    b. The Company promised that it would not issue Company shares to anyone for any reason at a purchase price of less than $0.35/share.

8. Defendants breached all of the aforementioned representations in connection with this transaction – they failed to procure $1,000,000 in capital; failed to register Plaintiff's shares by May 25, 2013; while they <u>did</u> issues Company shares to a variety of consultants and attorneys in exchange for a purchase price below $0.35/share, all in breach of the promises detailed in ¶ 7 above.

2

Case 5:17-cv-00018-RLV-DSC   Document 1   Filed 01/19/17   Page 2 of 14

9. Plaintiffs were injured when their shares were never registered and they were forced to wait an additional 9 months to sell their shares as a result. By the time they were finally able to sell, the value of those shares had been vastly diminished due to the delay caused by Plaintiffs' actions in breach of the February 25 Agreements.

10. Plaintiffs suffered losses when the share price dropped from $1.50/share in June of 2013, to $0.09/share in March 2014, at the time that their shares became freely trading. This amounts to losses in an approximate amount of $2,609,991.

## PARTIES

11. Plaintiff Danzig Ltd. ("Danzig") is a North Carolina corporation with a principal place of business in Iredell County, North Carolina.

12. Non-party Elliott Foxcroft is the principal of Danzig.

13. Plaintiff Brett Bertolami is a natural person residing in Iredell County, North Carolina.

14. Defendants Inception Mining Inc., is a Nevada corporation with a principal place of business in Salt Lake City, UT, whose shares are publicly traded on the OTC.QB exchange.

15. Defendant Trent D'Ambrosio is Chief Financial Officer of the Company and a resident of Murray, Utah.

16. Defendant Michael Ahlin is Chief Executive Officer of the Company and a resident of Murray, Utah.

## VENUE & JURISDICTION

17. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1332 because the Parties are of diverse citizenship and the amount in question

exceeds $75,000.

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims at issue here arise out of a federal statute, Securities and Exchange Act, 17 CFR 240.10b-5, and Rule 10b-5 promulgated thereunder. The Court has supplemental jurisdiction over the related claims pursuant to 28 U.S.C. § 1367.

19. Venue is proper in this Court because Plaintiffs reside in this district and a substantial portion of the acts or omissions giving rise to Defendants' liability took place within this District.

20. This Court has personal jurisdiction over Defendants because they all have minimum contacts with the forum district in a manner that pertains specifically to the transaction at issue in this Action.

## FACTUAL BACKGROUND

21. In late 2012, Defendant D'Ambrosio was seeking equity investors for a mining project in Idaho.

22. The mine was not producing at the time and for this reason D'Ambrosio was seeking a shell company to merge into so that he could access the capital markets and lower the cost of raising money.

23. Attorney Steve Fleming referred D'Ambrosio to Danzig and its principal, Elliott Foxcroft.

24. Over the next 6 months Plaintiffs and D'Ambrosio negotiated the contours of the Agreement to merge the publicly traded entity, then known as Gold American Mining Corp., with the operating entity that would acquire the mine in Idaho.

25. That Agreement was finalized and executed on February 25, 2013 and disclosed to the Securities and Exchange Commission and the investing public on March 1, 2013 as Exhibit 10.1 to the "Super 8-K." It is attached to this Complaint as **Exhibit 1**.

26. The Company concurrently entered into a *Debt Exchange Agreement* with Plaintiff Bertolami and a *Consulting Agreement* with Plaintiff Danzig, Ltd, also disclosed as Exhibits to the Super 8-K, which are attached hereto as **Exhibit 2** and **Exhibit 3**, respectively. (**Exhibit 1, Exhibit 2,** and **Exhibit 3** shall be referred to collectively as the "Agreement" or the "February 25 Agreements").

27. Operative provisions of the February 25 Agreements are detailed below:

   a. The Company issued 1,000,000 shares to Brett Bertolami; (**Exhibit 2**), in addition to the 234,900 he still held as a result of the merger;

   b. The Company issued 565,094 shares to Danzig Ltd. (**Exhibit 3**);

   c. On February 25, 2014 ,the Company promised to "within 90 days of the date of this Agreement file with the Securities and Exchange Commission a Registration Statement or Registration Statements (as is necessary) on Form S-1," which would allow Plaintiff's 1,565,094 shares to become freely tradeable upon filing. (**Exhibit 3, ¶ 6**); and

   d. The Company promised "not to issue any of its common stock at a price below $0.35 per share (the "Floor") in connection with any financing without first obtaining Bertolami's consent." (**Exhibit 2, p. 1**)

28. Defendants breached all three of the promises detailed above with impunity.

**A. THE COMPANY FAILED AND REFUSED TO REGISTER PLAINTIFFS' SHARES.**

29. The Company failed to register Plaintiffs' shares with the SEC within the 90 days, by May 25, 2013, or at any time thereafter. At the time of filing this Complaint,

Plaintiffs' shares still have not been registered.

30. If the Company registered the shares as promised, then the shares would have been freely tradeable on May 25, 2013.

31. As a result of the Company's failure to register, however, Plaintiffs' shares were not freely tradeable on May 25, 2013, as anticipated, and instead were "locked up" for one year from the issuance date, until February 25, 2014, pursuant to the operation of Rule 144 as promulgated under the Securities and Exchange Act of 1934.[1]

32. As a result of deliberate actions taken by the Company as further detailed below, the Company's share price would plunge during that time period, from $1.50/share on May 25, 2013 to $0.05 shares on February 25, 2014.

33. Consequent to their combined holdings of 1,799,994 shares, Plaintiffs suffered an aggregate loss of $2,609,991 (-$1.45/share X 1,799,994 shares) as a result of the Company's failure to register Plaintiff's shares as promised in the February 25 Agreements.

**B. THE COMPANY ISSUED SHARES AT A PRICE BELOW $0.35/SHARE**

34. On February 18, 2014, IMI issued to Iconic Holdings, LLC ("Iconic") a Convertible Promissory Note ("Note") that, in relevant part, converted to Company shares at 60% of the Company's trading price ("Floorless Option").

35. Pursuant to the Floorless Option, Iconic Holdings converted portions of the Note to Company shares at $0.13336/share; $0.14848/share; $0.0605/share; and $0.5904/share.

36. The Company's issuance of the Note to Iconic Holdings constitutes a

---

[1] See, 17 CFR 230.144 (2015) ("A minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities . . .")

6
Case 5:17-cv-00018-RLV-DSC   Document 1   Filed 01/19/17   Page 6 of 14

breach of the February 25 Agreements because the Note was issued less than one year from the date of the DEA, (executed on February 25, 2013), on February 18, 2014, and constitutes issuance of shares at a price that is below the floor of $0.35/share promised in the Agreements.

**C.    DEFENDANTS COMPOUNDED THEIR ERROR BY REGISTERING SHARES OF OTHER SERVICE PROVIDERS AND NOT THE SHARES OF PLAINTIFFS.**

37.    On September 18, 2013, Defendant registered 1,750,000 shares with the SEC via Form S-8. (**Exhibit 4**)

38.    On information and belief, those shares were issued to Defendant Ahlin, and then transferred to non-party Fleming PLLC, the Company's securities counsel, in exchange for legal services rendered.

39.    On information and belief, Fleming PLLC then quickly liquidated its shares in the Company, further depressing the price of the stock.

40.    During this time, in September of 2013, Plaintiffs were still unable to mitigate losses by selling shares because their shares remained unregistered and the Rule 144 holding period of one year had not yet lapsed.

41.    When Plaintiff's shares eventually became freely tradeable on February 25, 2014, Individual Defendants themselves compounded Plaintiffs' losses by selling significant amounts of shares into the marketplace and further depressing the stock price.

42.    Individual Defendants reaped millions of dollars from the sale of their Company shares through a third party trust in a manner undisclosed to the SEC or the investing public.

43.    Around this time, in an email dated April 24, 2015, Defendant

D'Ambrosio offered to make Plaintiffs whole by delivering to Plaintiffs shares in the Company equal to "8%" of the shares then issued and outstanding, with "no lockup."

44. Plaintiffs accepted this offer of settlement, but Defendants again failed and refused to perform upon their obligations, even under the modified agreement.

45. Having reaped millions of dollars in sales of their own securities, Individual Defendants then proceeded to effectuate a 5-1 forward reverse split, which reduced the number of shares held by Company shareholders by 80%.

46. The Company share price remained at $0.05 despite the reverse split and Plaintiffs' already battered holdings were further reduced in value by 80%.

47. Plaintiffs come now to seek redress for these injuries.

## COUNT I
**(Federal Securities Fraud)**
**(Securities & Exchange Act of 1934, Rule 10b-5; Section 20A)**
**(All Defendants)**

48. The above allegations are incorporated herein by this reference.

49. Defendants made false or misleading misstatements of fact or material omissions in connection with the purchase and sale of a security when, *inter alia*, they promised to register plaintiff's securities within 90 days; to refrain from issuing shares for a purchase price below $0.35/share.

50. These statements were false at the time they were made, and made by Defendants with specific knowledge of their falsity.

51. These statements were made in connection with the purchase or sale of a security – 1,799,994 shares of Company stock.

52. Plaintiffs relied on these misrepresentations or omissions to their

detriment and suffered losses as a result, in excess of $75,000.

53. Defendants are therefore liable to Plaintiffs for all damages accrued as a result of their misrepresentations pursuant to Securities and Exchange Act, 17 CFR 240.10b-5, and Rule 10b-5 promulgated thereunder, in addition to disgorgement of ill-gotten gains garnered through the fraud.

54. Individual Defendants are personally liable for the fraud pursuant to Exchange Act § 20A; 15 U.S.C. § 78(t)(a).

## COUNT II
### (Securities Fraud in Breach of North Carolina Securities Act)
### (N.C.G.S. § 78A *et seq.*)
### (All Defendants)

55. The above allegations are incorporated herein by this reference.

56. Defendants made false or misleading misstatements of fact or material omissions in connection with the purchase and sale of a security when, *inter alia*, they promised to register plaintiff's securities within 90 days; to refrain from issuing shares for a purchase price below $0.35/share.

57. These statements were false at the time they were made, and made by Defendants with specific knowledge of their falsity.

58. These statements were made in connection with the purchase or sale of a security – 1,799,994 shares in Company stock.

59. Plaintiffs relied on these misrepresentations or omissions to their detriment and suffered losses as a result, in excess of $75,000.

60. Defendants are liable to Plaintiffs for the entirety of their losses, in addition to attorneys fees accrued in pursuit of this Action pursuant to N.C. Gen. Stat. §

9

78A-56(a)(2).

61. Individual Defendants are personally liable to Plaintiffs for the entirety of their loss pursuant to N.C. Gen. Stat. § 78A-56(c)(1).

## COUNT III
### (Breach of Contract)
### (All Defendants)

62. The above allegations are incorporated herein by this reference.

63. Defendants breached the February 25, 2013 Agreements with Plaintiffs when they refused to register Plaintiffs' shares within 90 days from February 25, 2013, or ever thereafter; when they issued shares in Company stock at a price below $0.35/share.

64. Plaintiffs fully performed under the February 25 Agreements.

65. Plaintiffs were injured as a result of Defendants' breach, in an amount exceeding $75,000.

## COUNT IV
### (Unjust Enrichment)
### (All Defendants)

66. The above allegations are incorporated herein by this reference.

67. Plaintiffs conferred a measurable benefit upon defendant when they invested conveyed to Defendants and their agents 98% of the shares in a shell company that Plaintiffs had purchased for $250,000.

68. Defendants knowingly retained that benefit without any justification in law.

69. Plaintiff is entitled to restitution of the amount by which Defendants were unjustly enriched, in an amount exceeding $75,000.

## COUNT V
### (Common Law Fraud)
### (All Defendants)

70. The above allegations are incorporated herein by this reference.

71. Defendants made false representations of material fact – that they intended to register Plaintiffs' securities by May 25, 2013; that Defendants would not sell Company shares beneath a purchase price of $0.35/share.

72. Defendants were aware of the falsity of these statements at the time they were made.

73. Plaintiffs reasonably relied on these false statements to their detriment and were injured as a result of their reliance in an amount which exceeds $75,000.

## COUNT VI
### (Breach of Fiduciary Duty)
### (All Defendants)

74. The above allegations are incorporated herein by this reference.

75. Defendants owed to Plaintiffs a fiduciary duty as investors and shareholders in the Company.

76. Defendants failed to act in good faith and with due regard to Plaintiffs' interests when they failed to register Plaintiffs' shares in Company stock; when Defendants sold shares at a price below $0.35/share; when Defendants registered shares and issues them to other third party consultants and attorneys without ever registering Plaintiffs' shares.

77. On information and belief, Defendants further breached their duty to Plaintiffs by selling shares into the market through a third party trust in a manner which

was not properly disclosed to the investing public as requires by SEC regulations.

78. Plaintiffs were injured as a result of Defendants' breaches of their fiduciary duty in an amount which exceeds $75,000.

## COUNT VII
### (Negligent Misrepresentation)
### (All Defendants)

79. The above allegations are incorporated herein by this reference.

80. Defendants provided to Plaintiffs false information about the contemplated transaction for the guidance of Plaintiffs in Plaintiffs' business transactions without making reasonable effort to ascertain the truthfulness of the representations made to Plaintiffs.

81. Plaintiffs reasonably relied on those false representations – *inter alia*, that Plaintiffs' shares would be registered by May 25, 2013; that no further sales of Company shares would be made for a price below $0.35/share – when they elected to enter into the transaction.

82. Plaintiffs were injured as a direct result of their reliance on the false statements in an amount in excess of $75,000.

**Plaintiffs demand a trial by jury on all issues so triable.**

## PRAYER FOR RELIEF

THEREFORE, Plaintiff prays for the following relief:

A. That the Court enter an award against Defendants, in favor of Plaintiffs, in an amount of the damages suffered by Plaintiffs as a result of Defendants' breach

of the Securities and Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, including disgorgement of illicit gains. The Court's order must attach to the Company and Individual Defendants, joint and severally liable as the Individual Defendants are personally liable pursuant to Section 20A of the Exchange Act;

B. That the Court enter an award against Defendants, in favor of Plaintiffs, in an amount of the damages suffered by Plaintiffs as a result of Defendants' breach of the North Carolina Uniform Securities Act, including disgorgement of illicit gains. The Court's order must attach to the Company and Individual Defendants, joint and severally liable as the Individual Defendants are personally liable for all losses, including reasonable attorneys fees pursuant to N.C. Gen. Stat. § 78A-56(c)(1);

C. That the Court enter an award against Defendants, in favor of Plaintiffs, in an amount of the damages suffered by Plaintiffs as a result of Defendants' breach of contract;

D. That the Court order Defendants to make restitution to Plaintiffs for the entire amount by which they were unjustly enriched at Plaintiffs' expense;

E. That the Court enter an award against Defendants, in favor of Plaintiffs, in an amount of the damages suffered by Plaintiffs as a result of Defendants' Fraud;

F. That the Court enter an award against Defendants, in favor of Plaintiffs, in an amount of the damages suffered by Plaintiffs as a result of Defendants' breach of their fiduciary duty to Plaintiffs, including disgorgement of unlawful gains;

G. That the Court enter an award against Defendants, in favor of Plaintiffs, in an

amount of the damages suffered by Plaintiffs as a result of Defendants' Negligent Misrepresentation;

H. That the Court award to Plaintiffs their costs and reasonable attorneys' fees incurred in bringing this Action;

I. That the Court award pre- and post-judgment interest at the legal rate;

J. Any other and further relief the Court deems appropriate in the sound exercise of its discretion.

Respectfully submitted,

/s/ *Kevin Donaldson*                                             DATED: January 19, 2017
Kevin Donaldson, Esq.
JONES, CHILDERS, DONALDSON & WEB, PLLC
149 Welton Way
Moorseville, NC 28117

Carlos E. Duque, Esq.
(Massachusetts Bar No. 676221)
(*Pro hav vice forthcoming*)
JPF SECURITIES LAW LLC
745 Atlantic Avenue, 8th Floor
Boston, MA 02111

Attorneys for Plaintiffs
DANZIG LTD. and BRETT BERTOLAMI